IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
WILLIAM BRITT REEVES,           )
                                )
              Petitioner,       )
                                )
         v.                     )    1:09CV287
                                )
JOEL HERRON,                    )
                                )
              Respondent.       )
```

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1.) On April 4, 1995, in the Superior Court of Forsyth County, Petitioner was sentenced to life imprisonment upon his conviction for first-degree murder (for an offense committed May 26, 1994). State v. Reeves, 343 N.C. 111, 468 S.E.2d 53 (1996). Petitioner does not challenge that conviction in the present case. Instead, he attacks prison disciplinary proceedings which occurred on January 28, and February 10, 2009. In the first incident, Petitioner pled guilty to the unauthorized possession of tobacco products or paraphernalia and received 20 days of segregation, suspended, and one month of limited account draw. (Docket Entry 14, Ex. 4.) In the second incident, he was convicted of attempting to possess an unauthorized audio device/equipment and the misuse of the mail, resulting in punishment of 60 days of segregation, 60 days loss of good time credits, 80 hours of extra duty, 210 days of loss of privileges, and six months of limited account draw. (Id.)

**Petitioner's Claim and Respondent's Pending Motion**

Petitioner has raised only a single ground for relief, i.e., that his due process rights were violated during the disciplinary proceedings. His supporting facts read in their entirety: "Petitioner was facing all charges mention [sic]. He received an [sic] statement from a key witness who had come forward an [sic] wrote a statement that he and others set up a way to have Petitioner charged with a disciplinary charge." (Docket Entry 1 at 6).

One of Petitioner's exhibits adds clarity to his claim. In a motion for appropriate relief submitted in the state courts, Petitioner explained that he was charged with mailing letters which broke prison rules. Another inmate confessed to writing the letters and making it appear that Petitioner was involved. However, Petitioner claimed in his motion for appropriate relief that this witness's statement was excluded at the disciplinary hearing and was not investigated. (Id. Attachs.) Therefore, it appears Petitioner claims that his due process rights were violated because he was not allowed to present his witness's statement to prove that he was framed. Based on this claim, he asks that the disciplinary charges be dismissed, that all of his privileges be restored, that his good time credits be restored, and that his funds be returned. (Id. at 15.)

Respondent has moved for summary judgment on Petitioner's claim. (Docket Entry 13.) He notes that Petitioner did not properly exhaust his state court remedies as to his claims.

-2-

Respondent, however, asks the Court to deny the claims on their merits under 28 U.S.C. § 2254(b)(2). The Court agrees that such a course best serves the interests of judicial economy.

## Discussion

To evaluate Petitioner's claim, the Court first must analyze the nature of the remedies available via a habeas corpus action. The right to habeas corpus review springs from the United States Constitution. See Immigration and Naturalization Serv. v. St. Cyr, 533 U.S. 289, 300 (2001) ("Article I, § 9, cl. 2, of the Constitution provides: 'The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.'"); Murray v. Carrier, 477 U.S. 478, 500 (1986) ("The writ emerged in England several centuries ago, and was given explicit protection in our Constitution." (internal footnote omitted)). "[O]ver the years, the writ of habeas corpus evolved as a remedy available to effect discharge from any confinement contrary to the Constitution or fundamental law, even though imposed pursuant to conviction by a court of competent jurisdiction." Preiser v. Rodriquez, 411 U.S. 475, 485 (1973). However, "[a]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." St. Cyr, 533 U.S. at 301 (emphasis added). Accordingly, "unless Congress acts to suspend it, the Great Writ of habeas corpus . . . serv[es] as an important judicial check on the

Executive's discretion in the realm of detentions." Hamdi v. Rumsfeld, 542 U.S. 507, 536 (2004) (emphasis added).

"[T]he first Congress made the writ of habeas corpus available only to prisoners confined under the authority of the United States, not under state authority." Felker v. Turpin, 518 U.S. 651, 663 (1996). "In 1867, Congress provided the writ of habeas corpus for state prisoners; the Act gave federal courts power to grant writs of habeas corpus in all cases where any person may be restrained of his or her liberty in violation of the Constitution, or any treaty or law of the United States." Murray, 477 U.S. at 500 (internal footnote and quotation marks omitted). Since 1948, the "authority to grant habeas relief to state prisoners [has been] limited by § 2254, which specifies the conditions under which such relief may be granted to 'a person in custody pursuant to the judgment of a State court.'" Felker, 518 U.S. at 662 (quoting 28 U.S.C. § 2254(a)).[1]

---

[1] The bulk of the federal statutory provisions related to habeas corpus matters are codified in "Chapter 153 of Title 28 of the United States Code." In re Vial, 115 F.3d 1192, 1194 (4th Cir. 1997). Within this Chapter lies Section 2241, the provisions of which trace directly back to both the first Congress's codification of habeas corpus and the 1867 Congress's statutory expansion of the writ, see Felker, 518 U.S. at 659-60 & nn.1-2, as well as the now more-commonly invoked Sections 2254 and 2255, see Vial, 115 F.3d at 1194. "Under this framework, individuals convicted of crimes in state courts seek federal habeas corpus relief through [Section] 2254. Those convicted in federal court are required to bring collateral attacks challenging the validity of their judgment and sentence by filing a motion to vacate sentence pursuant to [Section] 2255." Id. However, in some cases, convicted state and federal prisoners can proceed directly under Section 2241 (rather than Sections 2254 or 2255, respectively), as do other persons in custody though not convicted; uncertainty over these statutory boundaries has spawned substantial litigation, for example: "[W]here a state inmate is challenging the execution of his state court sentence, circuit courts are split on whether 28 U.S.C. § 2241 or 2254 is the proper statute under which a state inmate should proceed." Ford v. Ozmint, C/A No. 4:08-450-CMC-TER, 2009 WL 250022, at *1 n.1 (D.S.C. Feb. 2, 2009) (unpublished). The United States Court of Appeals for the Fourth Circuit has noted this divide, but not staked out
(continued...)

-4-

"Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action." Muhammad v. Close, 540 U.S. 749, 750 (2004). However, "[s]ome cases are hybrids . . . ." Id. Accord Gonzalez-Fuentes v. Molina, 607 F.3d 864, 873 (1st Cir. 2010) (describing case as "example of the difficult intermediate case where an inmate is seeking neither a change in conditions nor an earlier release, but rather a less restrictive form of custody" (internal brackets and quotation marks omitted)); Graham v. Broglin, 922 F.2d 379, 381 (7th Cir. 1991) ("The difficult intermediate case is where the prisoner is seeking not earlier freedom, but transfer from a more to a less restrictive form of custody.").

The United States Supreme Court first commented on such "hybrid" cases in Preiser, wherein it ruled that habeas corpus actions represent the only avenue to federal court for "state prisoners who were deprived of good-conduct-time credits by [state prison officials] as a result of disciplinary proceedings." Id. at 476, 500. Accord Wilkinson v. Dotson, 544 U.S. 74, 79 (2005) ("Because an action for restoration of good-time credits in effect

---

[1](...continued)
its position. See Gregory v. Coleman, 218 Fed. Appx. 266, 267 & n.* (4th Cir. 2007). Although the technical issue of whether Section 2241 is available in a particular case (in lieu of Section 2254) often carries dispositive significance, see Martin v. Johnson, No. 7:07CV436, 2007 WL 2746962 (W.D. Va. Sept. 20, 2007) (unpublished), on other occasions, it does not, see Crowe v. South Carolina Dep't of Corr., C/A No. 4:08-2955-CMC-TER, 2008 WL 4831484, at *1 n.1 (D.S.C. Nov. 4, 2008) (unpublished). Because this case appears to fall into the latter category, the Court will not focus on the subject noted in Gregory at this time.

demands immediate release or a shorter period of detention, it attacks 'the very duration of physical confinement' and thus lies at 'the core of habeas corpus.'" (internal citations and ellipses omitted) (quoting Preiser, 411 U.S. at 487-88)). See also Pierce v. Freeman, No. 95-7031, 1997 WL 467533, at *1-2 (4th Cir. Aug. 15, 1997) (unpublished; decision without opinion, 121 F.3d 699) ("[A] prisoner seeking the restoration of good time credits in federal court may only do so by way of writ of habeas corpus. Neither can [a prisoner] proceed on [a] claim for monetary damages for the alleged deprivation of good-time credits without due process of law. . . . [S]uch claims, if proven, would necessarily imply the invalidity of the revocation of [the] good time credits . . . and are consequently barred under the rule announced in [Heck v. Humphrey, 512 U.S. 477, 487 (1994)]." (citing Edwards v. Balisok, 520 U.S. 641 (1997)) (internal citations omitted)).

In reaching that result, the Supreme Court distinguished prior "decisions upholding the right of state prisoners to bring [Section 1983] actions to challenge the conditions of their confinement," on the ground that, unlike the petitioners seeking reinstatement of good-conduct-time credits, "none of the state prisoners in those cases was challenging the fact or duration of his physical confinement itself, and none was seeking immediate release or a speedier release from that confinement - the heart of habeas corpus." Preiser, 411 U.S. at 498. It, however, added: "This is not to say that habeas corpus may not also be available to challenge such prison conditions. See Johnson v. Avery, 393 U.S.

483 (1969); <u>Wilwording v. Swenson</u>, [404 U.S. 249 (1971)]. When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making the custody illegal." <u>Preiser</u>, 411 U.S. at 498 (internal parallel citations omitted).[2] Finally, the Supreme Court declared that, even where a "petitioner's challenge to his custody is that . . . he is unlawfully confined in the wrong institution, as in <u>In re Bonner</u>, 151 U.S. 242 (1894), and <u>Humphrey v. Cady</u>, 405 U.S. 504 (1972)[,] . . . his grievance is that he is being unlawfully subjected to physical restraint . . . [and] habeas corpus has been accepted as the specific instrument to obtain release from such confinement." <u>Preiser</u>, 411 U.S. at 486 (internal parallel citations omitted).[3]

---

[2] In <u>Johnson</u>, a state prisoner filed "a 'motion for law books and a typewriter,' in which he sought relief from his confinement in the maximum security building. The District Court treated this motion as a petition for a writ of habeas corpus and, after a hearing, ordered him released from disciplinary confinement and restored to the status of an ordinary prisoner." <u>Johnson</u>, 393 U.S. at 484. The United States Court of Appeals for the Sixth Circuit reversed that order, but the Supreme Court countermanded the reversal. <u>Id.</u> at 485, 490. In <u>Wilwording</u>, prisoners aggrieved by "living conditions and disciplinary measures while confined in maximum security at Missouri State Penitentiary, . . . sought federal habeas corpus . . .[, but] [t]he District Court dismissed the petitions and the Court of Appeals for the Eighth Circuit affirmed [for non-exhaustion of state remedies]." <u>Wilwording</u>, 404 U.S. at 249-50. The Supreme Court reversed on two grounds: 1) petitioners had sufficiently pursued available state remedies; and 2) "<u>although cognizable in federal habeas corpus</u>, petitioners' pleading may also be read to plead causes of action under [Section 1983] . . . not [then] subject . . . to exhaustion requirements." <u>Id.</u> at 250-51 (emphasis added). The United States Court of Appeals for the Fourth Circuit has cited <u>Johnson</u> and <u>Wilwording</u> as authority for "hold[ing] there is federal habeas corpus jurisdiction over the complaint of a federal prisoner who is challenging not the validity of his original conviction, but the imposition of segregated confinement without elementary procedural due process and without just cause." <u>McNair v. McCune</u>, 527 F.2d 874, 875 (4th Cir. 1975).

[3] In <u>Bonner</u>, the petitioner was convicted in a federal court for an offense committed in Indian Territory, but was sentenced to serve the one-year custody sentence at a state penitentiary because no federal facility existed nearby; the
(continued...)

In light of <u>Presier</u>, the United States Court of Appeals for the Seventh Circuit adopted "the following generalization":

> <u>If the prisoner is seeking</u> what can fairly be described as <u>a quantum change in the level of custody</u> - whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation, or <u>the run of the prison in contrast to the approximation to solitary confinement that is disciplinary segregation</u> - then <u>habeas corpus is his remedy</u>. But if he is seeking a different program or location or environment, then he is challenging the conditions rather than the fact of his confinement and his remedy is under civil rights law, even if, as will usually be the case, the program or location or environment that he is challenging is more restrictive than the alternative that he seeks.

<u>Graham</u>, 922 F.2d at 381 (emphasis added). <u>Accord</u> <u>Streeter v. Hopper</u>, 618 F.2d 1178, 1181 (5th Cir. 1980) ("Plaintiffs' original complaint, seeking release from the imposition of administrative segregation without due process, would be appropriately treated as a habeas corpus petition . . . ."). The United States Court of Appeals for the Fourth Circuit has cited with approval the Seventh Circuit's "quantum change in the level of custody" language. <u>See</u> <u>Plyler v. Moore</u>, 129 F.3d 728, 733 (4th Cir. 1997).

Turning now to the merits of Petitioner's claim, most of the punishments he suffered as a result of the disciplinary hearing--

---

[3](...continued)
Supreme Court granted habeas corpus relief because it found such placement inconsistent with federal law. <u>See</u> <u>Bonner</u>, 151 U.S. at 242-43, 254-55. In <u>Humphrey</u>, the Supreme Court ordered an evidentiary hearing as to equal protection claims presented by a habeas petitioner convicted in a state court of a sex offense and then detained in lieu of and beyond the length of his prison term pursuant to a state civil commitment statute applicable to sex offenders; the issues raised by the petitioner included the assertion that state officials should have placed him in a mental hospital rather than a prison during any civil commitment. <u>See</u> <u>Humphrey</u>, 405 U.S. at 506, 514. The <u>Humphrey</u> Court specifically observed that, "[i]n [his] petition for federal habeas corpus, [the petitioner] seeks to challenge the constitutional validity of the statutory procedures for commitment and <u>the conditions of his confinement</u>." <u>Id.</u> at 506 (emphasis added).

extra duty, suspension of privileges, and limitations on trust account draws--do not give rise to a federal habeas corpus claim because they fail to affect the length or to make a quantum change in the level of Petitioner's confinement.  See Malchi v. Thaler, 211 F.3d 953, 958 (5th Cir. 2000) (denying habeas relief for commissary and cell restrictions); Cobb v. Mendoza-Powers, No. EDCV 08-1920, 2010 WL 364453, at *5 (C.D. Cal. Jan. 25, 2010) (ruling that extra duty does not support habeas claim).

As to the remaining discipline, segregation can support a habeas claim, but only in very limited circumstances where, as discussed above, a "quantum change in custody" is alleged. Subsequent to Preiser (and Graham), the Supreme Court held that, in general, "a prisoner incarcerated as a result of a criminal sentence ha[s] no liberty interest in being free from segregated confinement imposed as a disciplinary measure . . . [because] such discipline 'falls within the expected perimeters of the sentence imposed by a court of law.'"  Rapier v. Harris, 172 F.3d 999, 1002 n.2 (7th Cir. 1999) (quoting Sandin v. Conner, 515 U.S. 472, 485 (1995)).  The Supreme Court left open only the possibility that a liberty interest could arise for a sentenced prisoner placed in segregation if the conditions of that confinement "'impose[d] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  Bevarati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997) (quoting Sandin, 515 U.S. at 484). Accordingly, to pursue a habeas corpus action (or a Section 1983 claim) based on a segregation placement, Petitioner must present

allegations that he faced "atypical and significant hardship," id., beyond that associated with solitary confinement in general. See Sylvester v. Hanks, 140 F.3d 713, 714 (7th Cir. 1998) ("Although dramatically more restrictive confinement may be contested in a collateral attack under § 2254, recent cases . . . imply that the difference between a prison's general population and segregation does not implicate a 'liberty' interest – and therefore could not be 'custody' for purposes of § 2254." (internal citations omitted) (citing Graham and Sandin)).

Petitioner presents nothing to show that his time in segregation amounted to an "atypical and significant hardship" beyond general prison conditions. Further, it appears that his sentence of segregation (and likely most of his other punishments) would have expired prior to his filing his habeas petition. For that reason, he would now have no habeas remedy as to that punishment no matter what facts he alleged or proved. This fact would moot Petitioner's claim. See Leonard v. Hammond, 804 F.2d 838 (4th Cir. 1986) (recognizing that mootness doctrine applies where habeas petitioner lacks legally cognizable interest in outcome). Any claim by Petitioner based on segregated confinement therefore cannot proceed.

The only remaining portion of Petitioner's challenge to the disciplinary proceedings concerns the loss of good time credits. Ordinarily, the loss of such credits can support a federal habeas claim. See Wilkinson, 544 U.S. at 79. However, in the context of the present case, it does not. Petitioner is serving a Class A

life sentence under North Carolina's Fair Sentencing Act, which applied to felonies committed between July 1, 1981 and September 30, 1994. The North Carolina Department of Correction does not apply good time credits to such prisoners even if they are eligible for parole. Jones v. Keller, ___ N.C. ___, ___ S.E.2d ___, 2010 WL 3367038, at *4 (2010). Because the loss of good time credits does not affect the fact or the duration of Petitioner's sentence, he has no cognizable claim. See Hayes v. Quarterman, Civil Action No. H-08-2501, 2009 WL 2044652 (S.D. Tex. July 7, 2009); Johnson-El v. Cooper, No. 3:09CV102-1-MU, 2009 WL 1872258 (W.D.N.C. June 29, 2009), appeal dismissed, 333 Fed. Appx. 764 (4th Cir. 2009), cert. denied, 130 S.Ct. 3334 (2010); Batie v. Florida Dep't of Corr., No. 1:06CV00062-MP-AK, 2009 WL 1490683 (N.D. Fla. May 22, 2009).

Finally, even if considered on its merits, Petitioner's claim that he was framed by other inmates would fail. According to Petitioner, he had a statement from another inmate supporting this fact, but still lost at his disciplinary hearing. The fact that Petitioner lost his hearing despite having some evidence to support his arguments did not violate his due process rights. In a prison disciplinary hearing, an inmate has a right to advance written notice of his charges, a chance to present evidence, and a written statement from the factfinder explaining the evidence relied upon and the reasons for the ultimate decision. Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985) (citing Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974)). In addition, the

-11-

factfinder's decision must find some support in the evidence.  <u>Id.</u> at 455.

In this case, the record reveals that Petitioner received written notice, a hearing, a rehearing at which he presented the statement from the other inmate, and a written decision finding him guilty despite the statement; moreover, the facts associated with the decision set out the evidence supporting the finding of guilt against Petitioner.  (Docket Entry 14, Ex. 4.)  Petitioner thus received due process.  His Petition should also be denied for this additional reason.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 13) be **GRANTED**, that the Habeas Petition (Docket Entry 1) be **DENIED**, and that Judgment be entered **DISMISSING** this action.

                                       /s/ L. Patrick Auld
                                         **L. Patrick Auld**
                         **United States Magistrate Judge**

October 6, 2010